EDWARD B. GALLAHER *vs.* THE SOUTHERN NEW ,
ENGLAND TELEPHONE COMPANY.

Third Judicial District, Bridgeport, April Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Section 3636 of the General Statutes is broad enough in its terms to
permit a single individual to apply to the Public Utilities Com-
mission for redress against a telephone company which is alleged
to have unreasonably neglected or refused to furnish him with
adequate service at reasonable rates, although if the grievance be
one shared by others similarly situated, they may join in the appli-
cation.

It is the duty of the Commission to determine whether the rates charged
a petitioner are, as alleged, unfair and discriminatory, and whether
the respondent has refused to furnish him with adequate service
at reasonable rates; and upon appeal, it becomes the duty of the
Superior Court to hear the evidence in the cause *de novo*, determine
the facts, and, upon them, decide the several questions of law
raised.

The petitioner offered to prove that the code-ringing party-line service
furnished by the respondent was not an up-to-date service, and
was not in use in any city outside of Connecticut. The petitioner
himself was not a party-line subscriber, but used the single-line
service for which the respondent charged a higher rate. No party-
line subscriber was a party to the action, and no evidence was
offered that the difference in rates between the two services was
unreasonable, nor that the party-line service had any effect upon
the rates charged, or service rendered, to the petitioner. The
evidence was excluded on the ground that the court had no power
to determine the particular system of telephony which the respond-
ent should inaugurate and put into use. *Held* that the exclusion
of the evidence was harmless in this case, because the petitioner
was not a party-line subscriber, and no evidence was offered that
he was in any way affected by that service; but that the reason
given for its exclusion was erroneous, as the evidence would have
been relevant and material had the adequacy of party-line service
been involved.

The respondent divided its Norwalk exchange into two zones or dis-
tricts: Zone A including the thickly-settled sections, and Zone B
the outlying or sparsely-settled sections, in which the petitioner
resided. The rates for the single-line service in Zone B exceeded
the rates for the same service in Zone A, based upon the increased

Gallaher *v.* Southern New England Telephone Co.

cost of service in the two zones. The rates for party-line service in the two zones were the same, but a greater number of subscribers were placed on the party-line in Zone B than in Zone A. *Held* that the record disclosed no element of unfairness in this division of its local exchange, nor in the charge of a larger rate in Zone B than in Zone A; that the additional charge to the individual or party-line subscriber in Zone B, and the continuance of the same party-line charge in both zones, might be justified, if the poorer service for the uniform charge corresponded fairly in value with the amount the party-line subscriber in Zone B should pay over the same kind of a subscriber in Zone A; since each should share in the increased cost of service in the outlying zone.

In the present case the Commission, and the Superior Court on appeal, each declared its inability, upon the evidence presented, to find whether the additional mileage charge to the petitioner was reasonable or not, but, notwithstanding such inability, rendered judgment to the effect that such charge was not unreasonable nor discriminatory. *Held* that the facts found, including certain corrections, did not support the conclusion embodied in the judgment, that the rate charged the petitioner was not unreasonable; that at most it could only be said that the evidence before the court and the facts found were insufficient to warrant the conclusion that the rate charged the petitioner was reasonable; and therefore, although there was error as to the form of the judgment, the petitioner must fail since he had not made out his case.

A request to correct a finding by striking out substantially all of its paragraphs and substituting therefor all the paragraphs of the draft-finding, not only violates our rules and practice, but is apt to awaken the distrust of this court as to the propriety of the appeal.

The case of *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, explained.

Argued April 13th—decided July 27th, 1923.

APPEAL by the plaintiff from a judgment of the Superior Court in Fairfield County, *Wolfe, J.,* confirming the action of the Public Utilities Commission in denying the petition of the plaintiff alleging inadequate telephone service by the defendant and unreasonable and discriminatory rates. *Error as to form of judgment.*

*Edward J. Quinlan* and *Jesse T. Dunbar,* for the appellant (plaintiff).

*James E. Wheeler*, for the appellee (defendant).

WHEELER, C. J.   The first seven reasons of appeal are, in effect, that the Public Utilities Commission erred in deciding that the service rendered and the rates charged the petitioner were neither unreasonable nor discriminatory, but in fact were reasonable, and in not taking into consideration the character, quality and adequacy of the service in making its decision; and in holding that it was not discriminatory and unreasonable for the defendant to impose an additional mileage charge on subscribers for a single-line service and not on subscribers for party-line service.

The petition was brought under General Statutes, § 3636, by the petitioner, an individual.   It is the defendant's contention, contrary to the trial court's ruling, that this section was not intended to permit a single person to raise a general rate question in relation to existing service, but "to the claim of a single person that a public service company unreasonably fails or refuses to furnish adequate service at reasonable rates"; and that "if he desired to attack the rates for service which affect not only himself but others similarly situated, his petition should have been brought with nine other patrons of the defendant" under § 3635, "or he should have secured action by the city in which he resides."

We determined this contention in *Root* v. *New Britain Gas Light Co.*, 91 Conn. 134, 99 Atl. 559, and at page 141 said: "The section apparently was framed to meet all manner of conditions of unfair and unreasonable treatment of members of the public in the matter of service and rates where individuals might be prompted to seek relief, whether the grievance was distinctly that of a single individual or one shared by several, similarly situated, but nevertheless, in its es-

sence, personal to each of the group. In the latter case there can, of course, be no objection to those, claiming to be similarly aggrieved, joining in presenting their grievance to the Commission and obtaining relief upon such presentation." And on page 145 we said: " We think that the court's duty on the appeal, was to have heard the parties before attempting to pass upon the question of reasonableness of the Company's action, and upon the facts so developed to determine whether the Commission's conclusion was one it was entitled to reach." So that upon the petition in the instant case, brought as it was by the plaintiff under § 3636, it was the duty of the Commission to determine whether the defendant had imposed rates which were unfair and discriminatory as against the plaintiff, and had refused to furnish adequate service at reasonable rates to him. And upon the appeal it was the duty of the court to hear the evidence in the cause *de novo*, determine the facts, and then upon them to determine the several questions of law raised upon the appeal, the principal one being whether the Commission erred in finding the rate charged the petitioner to be reasonable and not discriminatory. *Modeste* v. *Public Utilities Commission*, 97 Conn. 453, 459, 117 Atl. 494, is not in conflict with *Root* v. *New Britain Gas Light Co.*; it merely states an additional reason for the position taken in that case in the doctrine announced in *Ohio Valley Water Co.* v. *Ben Avon Borough*, 253 U. S. 287, 289, 40 Sup. Ct. 527, that the law authorizing an administrative body to fix rates or impose expenditures, claimed to be confiscatory, must provide for an independent judgment as to both law and fact by a court, otherwise the order will be void as in conflict with the "due process" clause of the Fourteenth Amendment.

The trial court on the defendant's objection excluded the plaintiff's offer to prove that code-ringing party-

line service was not an up-to-date service, and did not prevail in any city of the United States outside of the State of Connecticut; and in its memorandum of decision the court reiterates this ruling and gives its reasons for excluding it in this form: "No claim was made by the petitioner that the service received by him was inadequate, in the sense that he was not able at all times to get into prompt communication with such subscribers of the defendant Company as he desired to communicate with, or, on the other hand, with such persons as might desire to communicate with him. His grievance as to the inadequacy of service was based upon the claim that the character of the service which the defendant Company used in South Norwalk, and which is the common service in use throughout the State, is not a progressive, up-to-date service, but rather the contrary, and that it should partake of the character of what is called selective single-line service, such as is in use in other parts of the country. The court, however, need not spend any time upon this claim, for the reason that it has no power to determine and designate the particular system of telephony which the defendant Company shall inaugurate and put into general use. Such a power, even if imposed upon the court, would be an administrative one and not within the power of the court to execute."

We think the ruling and holding arose from the failure of the court to appreciate the full significance of the grounds of the appeal, which assert the error of the Commission in finding the rate complained of reasonable and not discriminatory. These grounds involved a consideration of whether or not the defendant had furnished adequate service at reasonable rates to this plaintiff. The defendant provided two kinds of service: the individual, or single-line service, which consists of a line connecting only one subscriber with

an exchange, and a party-line or code-ringing party-
line service, which consists of a line connecting several
subscribers with the exchange; the difference between
the two kinds of service being that in the first-named,
only the particular party who is wanted is rung, while
in the latter each telephone on the party line is rung
when a party is called. If it were true that the quality
of the service rendered to the plaintiff were not ade-
quate or the rates charged not reasonable, any evidence
tending reasonably to support the inadequacy or the
unreasonableness of the rate was clearly relevant and
material. And if the method of service was one not in
general use in that line of business, that fact would
tend to prove that the service rendered was not ade-
quate. The court's error was not in this case harmful.
The substitution of the selective single-line service in
place of the party-line service, which the plaintiff
offered to prove was in general use throughout the
country, so far as this record shows, would not affect
the service rendered the plaintiff, which was that of
the individual or single-line service, or the rate charged
the plaintiff. Nowhere in the claims made in the
presentation of this offer did counsel urge that the
introduction of this evidence would affect the service
rendered the plaintiff, or the rate charged him. No
party-line subscriber was a party plaintiff to whom
this evidence could apply. We must conclude that the
ruling refusing to permit this proof did not harm the
plaintiff, in the absence of an offer to also prove, in
connection with it, its effect upon the service rendered
to, or the rates charged to, the plaintiff. Nor can we
find in the record any basis for a claim that the rate
charged should have been the same for both the in-
dividual or single-line service, and for the party-line
service. This will sufficiently appear in our later dis-
cussion of whether the Commission and court erred in

holding the rate charged to have been reasonable and not discriminatory.

Before the Commission, the plaintiff contended that the rule of the defendant "establishing a base-rate zone within and including the continuously built up central section of each exchange and requiring single, but not party-line, subscribers outside of such zone, to pay a mileage charge from the base-rate zone line," was not a reasonable rule. It does not clearly appear whether or not this contention of the plaintiff was definitely made in the Superior Court, nor does it appear in the appeal, except, perhaps, inferentially. To avoid any further misunderstanding we state our view of the point. The Commission overruled this contention, and we think properly so.

The defendant telephone company has divided the area of its Norwalk Exchange into two distinct areas; the first is the continuously built up or thickly-settled central section known as the base-rate zone, called in the record Zone A; the second is the sparsely-settled area beyond the base-rate zone, called in the record Zone B. We correct the finding by inserting paragraph twenty-five of the draft-finding: "The business of the telephone company is to render service and not to rent facilities." The cost to the defendant of service in Zone B is greater than in the base-rate Zone A. The plaintiff objects to this finding, found in its paragraph twelve, but we are of the opinion that this much of paragraph twelve was properly found in accordance with the evidence. The Commission found and held: "The earning power of the telephone company's plant, of its poles and wires extending out into the rural and sparsely-settled communities, is necessarily limited by reason of the comparatively few subscribers and, as stated by the respondent [the defendant], it would be illogical and unfair to offer common service at common

rates throughout all sections of the State or of an exchange area."

The finding supports these conclusions. It finds that "in determining the boundaries of an exchange area, the policy and purpose is to include those subscribers whose interests in the point of exchange connection are common. For that reason municipal or township lines are disregarded in the determination of exchange boundaries, except in so far as they appear to define that community of interest. . . . Within the base-rate zone the cost of providing and maintaining the plant required to furnish a given type of service does not differ widely as between the various locations of individual subscribers. For that reason the rate for individual or single-line service is common to all single-line subscribers within that zone, and the rate for party-line service is common to all party-line subscribers within that zone." In Zone B, the cost of providing and maintaining the plant required to furnish a given type of service is increased. For that reason the defendant was justified in adding to the base-rate of Zone A an additional charge to individual or single-line subscribers, based upon the distance between the location of the subscriber and the nearest point of the Zone A. To the party-line subscriber within Zone B no additional charge was made over the base-rate charge, but a greater number of subscribers were placed upon the party-line service than upon the party-line service in the base-rate Zone A. So that the defendant received a larger income from both branches of its service in Zone B than for corresponding service in Zone A.

The record discloses no element of unfairness in this division of the exchange area into the thickly-settled and the sparsely-settled zone. Nor does it present any element of unfairness in the charge of a larger rate in

Zone B than in Zone A. The evidence warranted the findings as recited. The difference in additional charge to the individual or single-line subscriber of Zone B and the continuance of the same party-line charge in Zones A and B, may be justified if the poorer service rendered for the common charge equals the fair amount the party-line subscriber in Zone B should pay over the same kind of subscriber in Zone A. Each should share in the increased cost of service in Zone B over Zone A. In reaching this result, proper allowance should be made in fixing the party-line rate for Zone B for the general benefit to the Company, and hence to all subscribers in the development of new business, and especially new rural business. The opinion of the Commission that it is "for the public interest to afford a lower standard of telephone service at common rates in rural and farming sections, rather than common service at unequal or higher rates," seems to be sound. In carrying out this idea it must not be forgotten that there must be a reasonable pecuniary correspondence between the increased rate for the individual or single-line subscriber, and the poorer service of the party-line subscriber in Zone B. Having disposed of these preliminary questions, we are now ready to consider the most seriously controverted questions in the appeal —whether the rate charged to this petitioner was unreasonable and discriminatory.

Before taking up this question, it is necessary to dispose of the assignment of errors that certain paragraphs of the draft-finding be added, and certain paragraphs of the finding be stricken out. These paragraphs comprise almost all of the paragraphs of the draft-finding and of the finding. No judge of the Superior Court ever made up a finding in this way. Counsel at once awaken in the court a distrust of an appeal which assigns as error the failure to find sub-

stantially the whole of the draft-finding, and in find-
ing substantially the whole of the finding. An appeal
made up in that way violates our rules as well as good
practice. The paragraphs (three, four, twenty-two,
twenty-three and twenty-four) of the draft-finding—
that the telephone exchange in Norwalk is not located
in the geographical center of Norwalk, and if it was,
the plaintiff would be in Zone A instead of Zone B—
were proven facts, but they are unimportant. The
exchange, upon the evidence, is located in substantially
the center of population. The court's finding of this
in paragraph sixteen, and that it is also located with
due regard to the geographical center and the con-
venient operation of the exchange by the company, is
justified by the evidence.

The items in paragraph nine of the draft-finding are
items of the expense for furnishing service to the sub-
scribers in Zone A and common to subscribers in Zone
B, except for the additional annual charges upon the
plant required to furnish service for the subscribers in
that zone. The rates for service charged to individual
subscribers in Zone A are $30, and for party-line sub-
scribers $24, and in Zone B for individual subscribers $30
plus $5 for each one quarter of a mile beyond Zone A,
and for party-line subscribers $24. The court should
either have found the facts as stated in paragraph nine,
or as a summary from them, that the total charge to
subscribers in Zone A covered all the expenses attendant
upon furnishing that service, and also the same ele-
ments of service for Zone B. It would then have been
possible to compare the additional charge made to the
plaintiff with the charge made to all subscribers for
this extensive service in Zones A and B.

Paragraphs ten, eleven, fifteen and twenty-seven of
the draft-finding should have been added to the finding.
They show in part the items of that part of the plant

in Zone B on account of which the additional charge was made to the plaintiff. "10. The service is rendered to the petitioner by means of a pair of No. 12 open wires for the first .6 of a mile; these wires are carried on poles which also carry approximately thirty wires to reach the subscribers in the locality where the petitioner resides; six of these wires are individual lines and the other twenty-four are party lines. 11. The party lines had on them an average of nearly six patrons per circuit, thus requiring the pole line on which the petitioner's wires are carried, to serve 60 to 70 subscribers. . . . 15. Two wires occupy two pines on one cross-arm on each pole. . . . 27. The total value of the pair of wires leading from the limit of the base-rate zone to the petitioner's residence is approximately $16."

Paragraphs twenty-six, twenty-eight, thirty-one and thirty-two are not material in view of our adding to the finding paragraph twenty-five and paragraph thirty: "The company use all the facilities in the entire city to furnish service to each subscriber." Paragraph thirty-three of the draft-finding, that the value of the company's property in 1921 in Norwalk, per telephone station, is approximately $90, exclusive of land valuation, should be added to the finding. Given the depreciation reserve credit for 1921, and its percentage to the gross income less the reserve, and the number of stations, and we get the value of the station as above.

In paragraph nine of the finding there should be stricken out, because not supported by the evidence, the finding that in Zone B the cost of providing and maintaining the plant therein differs widely as between the various locations of individual subscribers. That part of paragraph twelve reading: "all rates made by defendant are based upon a full consideration of all the factors of cost in the furnishing of service and with due regard for the interests of the public and

of the stockholders of the company alike," is also stricken out for the same reason. It was undoubtedly found upon the statement of the company's official, that their rates were based upon a consideration of all the factors of cost, etc., and such a statement without giving these factors does not furnish a basis upon which to make a finding as to whether a rate is reasonable or the reverse, and hence is immaterial to that issue and only useful in giving a general description of the method adopted by the defendant.

The Commission held: " As to whether the mileage charge established by the respondent [defendant] for single-line service outside the base-rate zone is reasonable or unreasonable, no facts were submitted upon which the Commission could base an opinion, but in examining mileage charges established by other telephone companies, and telephone rate schedules prescribed by other State commissions, the respondent's mileage charge is not unreasonable in comparison." But the Commission finally determined that this mileage charge was not unreasonable nor discriminatory. And it must have based its determination not upon the evidence submitted to it, but upon its own comparison of this rate with other rates charged by other telephone companies and telephone rate schedules in other jurisdictions. We think the determination of the Commission was erroneous, because rendered upon facts not properly in evidence before it. As the appeal included the error of the Commission in finding the rate reasonable and not discriminatory, the trial court should have sustained the appeal on these grounds unless it appeared in the evidence submitted to it that the rate was in fact reasonable and not discriminatory.

The elements of service for individual or single-line subscribers, whether in Zone A or B, are the same except as to the proper charge for the increased plant

required in Zone B. These elements, as we understand
this record, are the rights of way, the poles, cross-arms
and equipment, and the wires. Neither finding, draft-
finding nor evidence, gives the number of miles of poles
or of wire, or the number of cross-arms with equip-
ment in Zone B. Nor do they give the value of any
of these items except that the value of the wires re-
quired by the plaintiff are placed at $16. We have the
number of individual subscribers in Zone B. We do
not have the number of party-line subscribers, and we
do not have the return to the company from these
over and above the party-line charge for the same
service in Zone A. We have no finding as to the value
of this additional plant in Zone B, nor facts from which
this may be found. We have no finding of the return
from the subscribers in Zone B, nor facts from which
this can be made. We have no finding as to what
would be a reasonable return from the subscribers in
Zone B upon the value of this additional plant. Mak-
ing proper allowance for depreciation and reserve,
from these facts it would be impossible to draw the
legal conclusion that the rate charged the plaintiff was
a reasonable one. Nor do we think this conclusion
could be drawn from the other facts in the finding as
corrected on this appeal. The facts found suggest the
impression that the charge to the plaintiff was un-
reasonable, but they do not authorize a determination
of that conclusion. In his memorandum the trial judge
held: "Upon such evidence as was presented, I am
unable to find that the service furnished to the com-
plainant is either inadequate or discriminatory, or that
the rates charged him are unreasonable."

In the finding the court concludes: "(a) that the
service furnished by defendant to plaintiff is adequate
and is not discriminatory, nor are the rates charged
him unreasonable ones; . . . (c) that the Public Utili-

Gallaher *v.* Southern New England Telephone Co.

ties Commission acted legally in the matter and did not exceed or abuse its powers, and the decision of the Commission in the premises is approved."

The court made the same error the Commission did in finding that the evidence did not justify its conclusions, and thereafter reaching these conclusions and rendering its judgment in accordance with them and confirming the decision of the Commission and dismissing the appeal. The facts found did not support its conclusions that the rate charged the plaintiff was not unreasonable; at most they justified a conclusion that the evidence before the court and the facts found were insufficient from which to legally draw the conclusion that the rate charged the plaintiff was reasonable.

From the facts found we think the court was justified in its conclusions that the service furnished to plaintiff was adequate, and no claim was made that the service rendered by the defendant was inadequate except in its use of party-wire code-ringing instead of selective signalling service; and, so far as appeared, this did not affect either the service rendered the plaintiff or the rate charged him. Since all individual or single-line subscribers in Zones A and B received the same service and paid the same charge except for the additional charge for such subscribers in Zone B, the question of discrimination between these subscribers in these zones depends wholly upon whether the additional charge is reasonable or not.

The finding as corrected still shows that the plaintiff has not made out his case, and the errors of the trial court do not change this result.

There is error as to the form of judgment and the Superior Court is directed to correct the same in accordance with this opinion.

In this opinion the other judges concurred.