THE BILTON MACHINE TOOL COMPANY *vs.* THE UNITED ILLUMINATING COMPANY.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 30th, 1929—decided January 6th, 1930.

420

422

*Jonathan Grout* and *Raymond E. Hackett,* for the appellant (plaintiff).

*Lorin W. Willis,* with whom was *George N. Foster,* for the appellee (defendant).

WHEELER, C. J.   We have incorporated in the foregoing statement of facts the essential facts found by the trial court as corrected by us in a few particulars, the principal corrections including the striking out of most of paragraphs sixty-four, eighty, eighty-one, eighty-two and eighty-three relating to the knowledge of Mr. Bilton and the plaintiff and adding the substance of the facts, without the conclusions, as set forth in paragraphs sixty-five, seventy, seventy-three and seventy-four, sixty-six, sixty-six A and sixty-eight of appellant's draft-finding.

The plaintiff seeks to recover a certain amount of money which it alleges was wrongly charged against it by, and paid by it to, the defendant for power furnished the plaintiff, which constituted an unreasonable discrimination against it.

The trial court held that whatever payments were made were not discriminatory but were voluntary payments, for the recovery of which no action would lie.

The defendant is a public utility corporation engaged in supplying electric current for light and power in the city of Bridgeport and elsewhere in Connecticut and the payments complained of as discriminatory were made by the plaintiff to it for power so furnished.

The defendant is by law vested with certain rights and privileges, and endowed with some of the State's sovereign power and authorized to engage in the public service of supplying electric power to all applicants alike upon the basis of an equality of right in them in respect to service and charges.

The charge made by it for service must be equal and impartial, reasonable and uniform. It must be free from arbitrary imposition and every trace of favorit-

ism. Discrimination in charges and rates may at times exist to some extent, but its inevitableness or incidentalness must appear, as must the reasonable basis for it.

Discrimination as to service and rates may be based upon a reasonable classification. *Gallaher* v. *Southern New England Telephone Co.*, 99 Conn. 282, 121 Atl. 686; *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92, 21 Sup. Ct. 561; *Interstate Commerce Commission* v. *Baltimore & Ohio R. Co.*, 145 U. S. 263, 12 Sup. Ct. 844; *New York Telephone Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502, 509, 96 N. E. 109; *Cincinnatti, H. & D. R. Co.* v. *Bowling Green*, 57 Ohio St. 336, 346, 49 N. E. 121; Pond on Public Utilities (3d Ed.) §§ 270, 275, 279.

Basing the charge or rate by a sliding scale upon the quantity used is an accepted principle of business administration as applied to public utility corporations and this form of classification has been upheld by the courts where neither the classification nor the rates nor charges were unreasonable. *Silkman* v. *Water Commissioners*, 152 N. Y. 327, 332, 46 N. E. 612; *State ex rel. Mason* v. *Consumers Power Co.*, 119 Minn. 225, 229, 137 N. W. 1104. In *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92, 21 Sup. Ct. 561, the court said in an action against a public utility by one of its patrons: "There is no cast iron line of uniformity which prevents a charge from being above or below a particular sum, or requires that the service shall be exactly along the same lines. But that principle of equality does forbid any difference in charge which is not based upon difference in service, and even when based upon difference of service, must have some reasonable relation to the amount of difference, and cannot be so great as to produce an unjust discrimination."

The classification, according to the sliding scale of rates adopted by the defendant, decreasing as the quantity used increased, was not an illegal mode of classification, nor, so far as appears, were the charges as made within the gradations of this classification unreasonable.

This is not the complaint of the plaintiff. Its complaint is that the defendant presented to it two bills for separate charges for power used in each of its two departments, which it paid, with the result that the amount of these bills greatly exceeded the amount which have been due had the amount of power used in plaintiff's plant been combined and the charge made for the amount used under each of the gradations of this single sliding scale of rates. When the Parsons Company and the Standard Company were separate companies but getting their power from the equipment of the Parsons Company, the power used by each was billed in one bill under a single sliding scale. When these companies were merged into the plaintiff the defendant continued to supply power under the Parsons' contract down to October 1st, 1917, and at the rates provided for in that contract, which were more beneficial to it than defendant's current rates, and defendant sent plaintiff one bill in the name of The Parsons Foundry Company for the power furnished the plaintiff by the defendant and the bills were paid by the Bilton Company.

There was at the time of cancellation a single corporation—the plaintiff—receiving power from defendant. If any corporation using the same power as plaintiff used had at this time applied to defendant for service it would have received power service at the current rates on a single sliding scale which would have been billed on one bill. If defendant had divided the power used by this corporation and charged it upon

its books in two accounts billing it in two bills, each based on a single sliding scale the corporation would have paid on each sliding scale a larger amount than if the entire power used had been consolidated and one bill rendered for this based upon one sliding scale of rates.

About October 1st, 1917, it was necessary to increase the power consumed by the plaintiff and to furnish this, and in accordance with defendant's practice, it was necessary for plaintiff to sign an application for a new contract. It was advantageous for plaintiff to get its current for the foundry department under the Parsons' contract rates and it exercised its right to continue to that extent the contract, while for the rest of the power consumed the defendant was to receive the current rates, which it charged plaintiff.

After October 1st, 1917, and down to September 14th, 1918, the date of cancellation of Parsons' contract, the defendant sent plaintiff two bills each month, one in name of The Parsons Foundry Company figured at Parsons' contract rates and one in the name of The Bilton Machine Tool Company, figured at rates charged all consumers.

From the date of cancellation to December 9th, 1924, the defendant sent plaintiff, monthly, two separate bills, made as before and taken from the two ledger accounts maintained by it.

This was manifestly unreasonably discriminatory and hence illegal. The defendant knew of the merger. It had cancelled the Parsons' contract. It knew that the plaintiff was entitled to have all of the power used by it charged upon one ledger account and one bill furnished for this, and it knew that if it continued two accounts on its ledger and billed each account to the plaintiff it would be receiving from the plaintiff more than it was entitled to charge and more than it charged

other corporations similarly situated. Despite this it continued from September 14th, 1918, to December 9th, 1924, to keep upon its books two accounts, one against plaintiff and one against the Parsons Company although this company had merged with plaintiff and become nonexistent and the Parsons' contract which was the basis for this account had been cancelled, and it rendered two bills each month for the power used in the foundry and the machine tool departments of plaintiff's plant and based each bill on a single sliding scale, thus depriving plaintiff of the benefit of the quantity used rate on a single sliding scale.

At this time there was only one application or contract for service between these parties and justification for but one account and one bill.

The defendant attempts to justify the sending of two bills by its having two accounts on its books but there is no apparent reasonable basis in the record for carrying the two accounts. When defendant cancelled the Parsons' contract the occasion for the continuance of the account in the name of The Parsons Foundry Company ceased to exist. There then could exist, properly and legally, only one account on defendant's books and that was the account against the plaintiff. Some claimed distinction is attempted to be drawn between the application made by the plaintiff in 1917 for power and that which defendant required plaintiff to make in 1924, upon the theory that the earlier application covered only part of the power used by the plaintiff while the last application covered all used by it. We are unable to so read the earlier application. It was, as we read it, an application for all power which might be required. Certainly after the cancellation of the Parsons' contract it was the only application under which defendant rendered all its service down to December 9th, 1924, and the equip-

ment through which this power was obtained remained the same during this entire period.

The defendant was bound by law to furnish to the plaintiff electrical current without discrimination against it and to treat the plaintiff with equality as it presumptively did all of its patrons similarly situated. This the defendant has failed to do. The charges complained of were unreasonably discriminatory. The remaining point involved is whether the plaintiff was without knowledge of its right to a combined billing and made the payments involuntarily and under a mistake of fact. Both parties seem to acquiesce that the burden of establishing this is on the plaintiff. We shall so assume.

The trial court found that Mr. Bilton did know on October 1st, 1917, that two bills would be rendered, one computed on the sliding scale rate of the Parsons' contract and one on the current rates; the court further finds that Mr. Bilton, after the cancellation of the Parsons' contract, knew that the defendant would continue furnishing power as it had done under two separate contracts or applications until request for discontinuance of service was made it by plaintiff and that Mr. Bilton neglected to inform his subordinates of this but assumed that plaintiff would obtain the benefit of the combined billing. We think the finding as to Mr. Bilton's knowledge of the defendant's course after the cancellation is without support in the evidence. Mr. Bilton, defendant's own witness, denies this. No officer or even employee is shown to have known it, but the contrary is the necessary inference. It is hardly credible that Mr. Bilton or the other officers of this corporation would knowingly have continued to pay these discriminatory rates. The plaintiff's immediate action when Mr. Grippin ascertained that the plaintiff had been paying excessive rates,

which it could save by making a new application, is strongly indicative of what would have been done had the plaintiff or any of its officers earlier known this fact. That the employees knew of the two billings upon the same rates was not notice to the plaintiff; they did not know that plaintiff was entitled to a single billing on one sliding scale. Nor did its officers know what its rights were. The plaintiff had no knowledge that it was being discriminated against until after the exposure by Mr. Grippin, neither did it have knowledge that other corporations having more than one meter were being given the benefit of a single sliding scale. The defendant knew all this and knew that the plaintiff was being discriminated against. It was the plain duty of the defendant—a public utility— after the cancellation of the Parsons' contract, to have notified the plaintiff of its right to have all of the power used by it combined and figured on one single sliding scale. It could not continue, through discriminatory rates, to exact from the plaintiff moneys to which it knew it was not entitled and which it should have realized plaintiff would not pay had it known its rights. Ignorance of its rights and payments made by it in mistake through this lack of knowledge constituted in law "mistake of a material fact." It resulted in the plaintiff paying in excess of the rates charged to others for the same service under the same conditions. *Armour Packing Co.* v. *Edison Electric Illuminating Co.,* 115 N. Y. App. Div. 51, 56. The situation in this case is far afield from that in *Verran Co.* v. *Stamford,* 108 Conn. 47, 142 Atl. 578. There there was knowledge, here there was none, and the party defendant, a public utility, has required one of its patrons to pay for its service an excessive and unreasonably discriminatory rate.

The rule stated in the recent case—*Bridgeport*

*Hydraulic Co.* v. *Bridgeport,* 103 Conn. 249, 130 Atl. 164—has especial application to this case: "The action for money had and received is an equitable action to recover back money paid by mistake where the payor is free from any moral or legal obligation to make the payment and the payee in good conscience has no right to retain it. . . . The real ground of recovery is the equitable right of the plaintiff to the money. The court finds the plaintiff paid the money under a mistake of its rights and duties. It is admitted by the defendant that the plaintiff was under no moral or legal obligation to pay the money and that the defendant has no moral right in good conscience to retain it. The law of this State is well settled that under such circumstances the plaintiff is entitled to recover back the money so paid."

There is error, the judgment is reversed and the Superior Court directed to render judgment in favor of the plaintiff for $13,389.89 with interest from December 13th, 1928.

In this opinion the other judges concurred, except MALTBIE, J., who dissented.