G. E. ROOT ET ALS. *vs.* THE NEW BRITAIN GAS LIGHT COMPANY.

First Judicial District, Hartford, October Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In passing upon a petition for an extended gas service, under § 24 of chapter 128 of the Public Acts of 1911 relating to public-service corporations, the jurisdiction of the Public Utilities Commission is not limited to the area within which the gas company has seen fit to lay its mains hitherto, but embraces all the territory open to it by its charter.

Such a petition may be brought by a single resident of the unoccupied territory, but there is no reason why all residents within that territory who are similarly aggrieved should not unite in one petition.

The duty of a gas company with respect to an extension of its mains and service is not always determinable merely by ascertaining whether the extension will be immediately self-supporting or remunerative. The test to be applied is reasonableness, and while this has no definite or precise measure, it must, nevertheless, be determined, here as elsewhere, by taking into account all relevant circumstances.

The question whether a public-service corporation has unreasonably failed or refused to furnish adequate service at reasonable rates, is one of fact, and upon an appeal from a decision of the Public Utilities Commission the Superior Court should hear the parties before attempting to pass upon the reasonableness of the com-

pany's action, and upon the facts so developed before it should determine whether the Commission's conclusion was one it was entitled to reach.

In the present case the petition to the Commission did not allege, in the language of the statute, that the gas company had unreasonably failed or refused to provide the desired service, and this was made one of the reasons of the gas company's appeal. *Held* that this was a purely technical objection which had little standing before an administrative tribunal; that the petition, moreover, sufficiently apprised the gas company of what was desired and what it was called upon to meet; and that by failing to make any objection before the Commission when the defect, such as it was, could have been corrected, the gas company had waived it.

As indicative of legislative intent, the titles of statutes, or of sections thereof, are of little importance as compared with the text.

Argued October 4th—decided December 19th, 1916.

APPEAL by the respondent from an order of the Public Utilities Commission granting an application of the petitioners for an extended gas service in the town of Newington, taken to and tried by the Superior Court in Hartford County (*Case, J.*), which found that the Commission had exceeded its powers in passing the order in question and rendered judgment in favor of the respondent, from which the petitioners appealed. *Error, judgment set aside and new trial ordered.*

*George E. Hinman* and *John F. Forward,* for the appellants (petitioners).

*John Walsh* and *James E. Cooper,* for the appellee (the respondent).

PRENTICE, C. J. The New Britain Gas Light Company is a Connecticut corporation empowered by its charter to manufacture and sell gas for lighting and other purposes in the town and city of New Britain and the adjoining towns of Berlin and Newington. It has never undertaken to furnish service or exercise

its franchise in the latter town and has no mains, conduits or other equipment within it necessary for that purpose. Maple Hill is a section of that town lying easterly of the New Britain line and distant approximately twelve thousand feet, measured along the highway, from the Company's nearest main.

October 29th, 1915, certain residents of this section presented their petition to the Public Utilities Commission representing that they were desirous of being served by the Company, and had several times, without success, requested such service, and praying for a hearing in the matter. After due notice to the Company and a hearing, the Commission found that the Company had unreasonably failed or refused to furnish the petitioners with service at reasonable rates, and ordered it to extend its mains to the Maple Hill section and supply the inhabitants of that locality with gas. The order permitted the Company for a period of three years from the date of installation to so far depart from its regular rates charged in New Britain as to charge each customer on the Maple Hill extension a minimum annual rate of not more than $15.

From this order the Company appealed, alleging the foregoing facts which were admitted, either by the pleadings or orally to the court, and embodying in the appeal by reference the Commission's finding and order. No other facts of practical importance in the determination of the question before us, or passed upon by the Superior Court, were alleged or proved. In this situation the appeal came before the court, which, without a hearing upon the facts, which the parties were ready to enter upon, and upon the admitted allegations of the complaint and the contents of the finding of the Commission, ruled (1) that the Commission was without power in the premises, and (2) that the record negatived the finding of the Com-

mission that the Company had acted unreasonably in not giving the desired service.

In the first of these rulings there was error. Section 24 of Chapter 128 of the Public Acts of 1911 (p. 1394), as amended by § 1 of Chapter 225 of the Public Acts of 1913 (p. 1857), which upon its enactment became a part of the Company's charter, reads, omitting the unimportant provision as to a hearing, and including its title, as follows:—

"RATES AND SERVICE AFFECTING A SINGLE PERSON. If any public service company shall unreasonably fail or refuse to furnish adequate service at reasonable rates to any person within the territorial limits within which such company has, by its charter, authority to furnish such service, such person may bring his written petition to the commission alleging such failure or refusal. . . . Upon said hearing the commission may, if it finds that such company has unreasonably failed or refused to furnish such person with adequate service at reasonable rates, prescribe the service to be furnished by such company to such person, and the conditions under which, and maximum rates or charges at which such service shall be furnished. Such company shall thereafter furnish such service to such person in accordance with the conditions so prescribed, and shall not thereafter demand or collect any rate or charge for such service in excess of the maximum rate or charge so prescribed."

Here the legislative intent as to the scope of the Commission's authority is expressed in language apparently free from ambiguity or uncertainty of meaning. The express provision is that its authority extends to ordering service to be given and prescribing its character and conditions and the maximum rates chargeable therefor, whenever and wherever within the territorial limits within which a public service corpora-

tion has, by its charter, authority to furnish such service, it has unreasonably failed or refused to do so. This language, so clear, direct and definite, would seem susceptible of but one meaning, to wit, that the jurisdiction of the Commission extends to all situations of unreasonable failure or refusal to furnish adequate service at reasonable rates within its charter territory.

Counsel for the Company, however, insist that there are various considerations to be drawn from the section itself and its comparison with the two immediately preceding it in the Act of which it forms a part, which, taken together, lead to the conclusion that its provisions are less comprehensive. They say that it thus appears that the jurisdiction of the Commission as established by this section is a comparatively narrow one, confined to the prevention of discriminations against individual residents within the territory the corporation has chosen to occupy and serve, and that it does not extend to directing extensions of service into new or unoccupied districts. In aid of this contention we are asked to read § 24 in connection with the two preceding sections, and examine their titles. Section 22 deals with plants and equipment, and may be dismissed as throwing little light upon the matter in controversy. Section 23, bearing the title "Rates and Service affecting many persons," like § 24, deals with rates and service, and to that extent they are closely related.

The most significant thing appearing in the comparison of these two sections is, that if § 24 is to be given the narrow construction attributed to it, our law affords no means of relief to persons residing within the area in which the public service corporation has the right to operate, but outside of the area which it has chosen to occupy and serve, who may feel aggrieved at the failure or refusal to provide them with its serv-

ice. The claim is that § 23 embodies the law and all the law touching the Commission's power where the complaint is of want of service in unoccupied territory, but that section does not provide means of relief to persons seeking service denied them. No one is authorized by that section to petition the Commission except towns, cities or boroughs, the public service corporation, and its patrons to the number of ten. Surely it cannot be presumed that the legislature intended to limit the jurisdiction of the Commission in such a way that persons or groups of persons, claiming to be aggrieved by unreasonable deprivation of service by a public service corporation, which, by its charter, has substantially preëmpted the territory within which they reside, were not permitted to go to it for relief. In view of the purposes for which this Commission was constituted, as indicated by the legislation which defines its power, and the character and fulness of the jurisdiction confided to it, it is impossible to believe that such persons under such circumstances were intentionally left without the right to invoke its aid in the abatement of their real or fancied wrongs. Such, however, is the case unless § 24 gives it.

We fail to discover in what respect §§ 23 and 24, construed in accordance with the natural meaning of their language, are inconsistent or incompatible with each other. One deals with the complaints or desires of municipal corporations representing the public interest, or of the public service corporation itself or of its patrons: the other, with those of persons, either patrons regarding themselves discriminated against in the matter of service, or not patrons but desiring to become such. One has for its dominating purpose the maintenance, as between the Company and its patrons, of an adequate service at reasonable rates

with a due regard to the rights of both parties to that service: the other, a wider outlook more especially directed to individual members of the public whether they be already patrons or not. Doubtless relief in the matter of extension of fields of service may be sought and obtained under § 23, but the moving parties are limited. The right of petition is not given to the persons who may desire the extension. Such right as they may have is to be found in § 24, if anywhere.

The argument in favor of the Company's contention, attempted to be drawn from a comparison of the titles of these sections, has small foundation. The attempt to express in succinct form the subject-matter of the two sections is, perhaps, not altogether a happy one, but that is about all that can be said of it. In any event titles are of little importance as compared with text as indicative of legislative intent.

Counsel for the Company find further support for their contention in the use throughout § 24 of the singular number when reference is made to the aggrieved and petitioning parties and those to whom relief might be given. It is said that in the case of a desired extension of service the grievance, arising from a failure or neglect to gratify the desire, would naturally and almost necessarily be one shared by several constituting the residents of a section or locality, and that the right of petition to the Commission would, therefore, naturally. be given to such group. The section was doubtless drafted to meet cases of individual discrimination; but we see no force in the argument that such was its sole purpose, which it is attempted to draw from the use of the singular number as stated. Although the grievance in the case of failure or neglect to extend service would naturally be one shared by several or many, it would, for that reason, be no less individual as to each person affected, and there would be no in-

congruity in permitting the individuals so affected to move for its correction. The section apparently was framed to meet all manner of conditions of unfair and unreasonable treatment of members of the public in the matter of service and rates where individuals might be prompted to seek relief, whether the grievance was distinctly that of a single individual or one shared by several, similarly situated, but nevertheless, in its essence, personal as to each of the group. In the latter case there can, of course, be no objection to those, claiming to be similarly aggrieved, joining in presenting their grievance to the Commission and obtaining relief upon such presentation.

Counsel also say that the subsequent passage by the General Assembly in 1911 of Chapter 276 of the Public Acts of that year, p. 1585, is indicative of that body's understanding that § 24 of Chapter 128 had a limited application, and one that did not extend to extensions of service beyond the field already occupied. Whether Chapter 276 was enacted in a desire that there should be two entirely different means of relief where telephone service was denied in territory which was fairly entitled to it, or inadvertently, or for whatever reason, we are satisfied that neither the fact of the enactment of that legislation, nor any other of the reasons urged in support of the existence of ambiguity in § 24, and of the claim that its true intent and meaning makes the action of the Public Utilities Commission upon this appeal in excess of the authority vested in it, nor all together, are sufficient for that purpose. The language of the section is too clear, direct and specific to permit it reasonably to be held that whereas it provides for the right of petition to it, and the grant of relief by it, upon such petition whenever and wherever a public service corporation unreasonably fails or refuses to furnish adequate service at reasonable

rates within the territorial limits within which such company has, by its charter, authority to furnish such service, its true interpretation is that jurisdiction was conferred to prevent individual discriminations within the territory of actual service and nothing more.

It is quite apparent that the court, in rendering its judgment sustaining the appeal, relied primarily and principally upon its conclusion that in entertaining the petition and passing the order appealed from, the Commission exceeded its powers. Its memorandum of decision, however, states that it further found that the record negatives the claim that the Company's action in the premises was unreasonable, and the judgment-file sustains, among others, two reasons of appeal in effect: (1) that the refusal or failure of the Company to provide the desired service was not unreasonable; and (2) that it so appeared from the Commission's finding. It remains, therefore, to consider this aspect of the case.

These conclusions of the court are of fact. They were arrived at solely upon the admitted allegations of the appeal and such facts as appeared in the finding and order of the Commission. Even assuming the regularity of the course of procedure whereby the parties were deprived of a hearing, and the ultimate issue determined upon the facts the appealing party had chosen to set up in his appeal and upon those the Commission, in stating the reasons for its order, as the statute requires, had found it convenient or necessary to state, we are of the opinion that the court was not justified in its conclusion that the Commission's finding that the Company's action in withholding the desired service was unreasonable and should not stand.

The relevant facts with which the appeal and finding and order appealed from most concern themselves, relate to the cost of the extension, estimated at $20,000,

and the incommensurate prospective present return thereon. These are by no means the only considerations which should enter into a decision as to the propriety of the Company's action. Of course, a public service corporation should not, save possibly under some exceptional circumstances not present here, be required to give an enlarged service at a considerable cost where the prospects of return for many years to come are so meager as to be out of all proportion to that cost. But it is equally true that its duty in the exercise of rights that are essentially monopolistic in their character will not always permit it to stand by and withhold a desired service within its territory until such time as that particular service promises an adequate return from its inception.

The question of a public service corporation's duty is not one which is determinable by the application of any such simple test as "Will the proposed new service be immediately self-supporting or remunerative?" Its duty is measured by what it ought reasonably to be called upon to do. The test sets up reasonableness as the standard, and in its application here as elsewhere it takes into account all relevant circumstances and has no definite or precise measure. It is clear, however, that in a case like the one before us, prospective future returns from the new undertaking is a factor not to be overlooked or passed over slightingly.

In the present case the facts appearing upon the record make it quite clear that under existing conditions there would be small prospect of a sufficient income from the extended service to fairly compensate for its cost. As to future prospects, however, the record is not so informing. Nothing is said in the finding and order upon that subject beyond the statements that the evidence showed that Maple Hill was a growing community, that it might fairly be assumed

Root *v.* New Britain Gas Light Co.

that the number of users of gas would materially increase in the future, that it lies between the cities of Hartford and New Britain in the direction of the natural growth of the latter city, and that, to an extent, the introduction of gas would contribute to increase its population and thereby increase gas consumers sufficiently to ultimately make the proposed extension profitable to the Company. This is by no means definite language, and leaves much to be desired in the matter of an adequate knowledge of the future prospects of Maple Hill as a residential neighborhood, and the length of time before it is likely that the extension would realize an adequate return. Without more definite information than is thus furnished we do not think that the court was in a position to pass upon the question of whether or not the Commission was justified in making its order. What the promise of the future is, and what other circumstances there might be bearing upon the Company's action, were matters to be developed upon a hearing which would have afforded the parties an opportunity to enlighten the court upon the pertinent facts of the situation.

But that is not all. The proceedings upon petitions to the Commission, as prescribed by statute, contemplate such hearing. It is provided that every decision and order of the Commission shall be in writing and shall specify the reasons therefor: but there is nothing to suggest that the decision or order shall embody a finding of the facts shown to the Commission, or that it may be attacked on appeal for the insufficiency either of the facts which appear in it or of the reasons it assigns. On the contrary § 31, which deals with procedure, provides that the court shall hear the appeal and examine the question of the legality of the order, authorization or decision appealed from, and the propriety and expediency of such order, au-

thorization or decision, in so far as the court may properly have cognizance of the subject. We think that the court's duty on the appeal, was to have heard the parties before attempting to pass upon the question of the reasonableness of the Company's action, and upon the facts so developed to determine whether the Commission's conclusion was one it was entitled to reach. The court's decision, in other words, was to be arrived at upon the evidence presented before it, and not upon the contents of the finding and order of the Commission as a finding of facts analogous to a finding of facts on appeal by a court under our practice. Such is the procedure upon similar appeals from administrative tribunals, and such manifestly was the procedure intended to be provided by the Act constituting the Public Utilities Commission and defining its powers.

The appeal from the order of the Commission assigned as one reason of appeal that the petition did not pursue the statute and allege that the Company had unreasonably failed or refused to provide the desired service. This is a purely technical objection addressed to procedure before an administrative tribunal, where the observance of strict requirements, as in civil actions, is not required. *Norwalk* v. *Connecticut Co.*, 88 Conn. 471, 479, 91 Atl. 442. This petition was sufficient to invoke the aid of the Commission in the exercise of its powers, and sufficiently specific to apprise the Company of what was desired and what it was called upon to meet. Moreover, were this not true, the Company by its silence in the matter before the Commission, when any formal defect, such as this at most is, could have been corrected, waived it.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.