JOHN C. TURNER ET ALS. *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, April Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

An application to correct the finding does not reach statements of fact contained in the memorandum of decision, unless that is made a part of the finding by the trial court.

An agreed statement of facts has no place in the record unless certified and made a part thereof by the trial court.

Without a certification of the evidence, an appellant cannot secure a correction of the finding under § 797 of the General Statutes.

While the remedy prescribed by Chapter 128, § 23, of the Public Acts of 1911, for securing reasonable rates from public service corporations, is new in this State, the Act itself is merely an application in statutory form of an ancient rule of the common law.

Fixing a tariff of rates for services to be rendered by a public service corporation is a legislative function which cannot be imposed upon the courts; but they may be required to determine whether an order of the public utilities commission fixing maximum rates, or its order declining to change the rate fixed by the company, is valid or not, that is, whether it is reasonable or not, since that is a judicial question.

The reasonableness of a rate is to be determined after viewing its effect upon the public as well as upon the company. A rate so low as to be destructive of the company's property, or so high as to be an unjust exaction from the public, is unreasonable; a rate may also be too high intrinsically, or because it is discriminatory.

No satisfactory definition of "reasonable," as applied to rates, can be made which will cover every case; each must be decided upon its own facts and upon a consideration of many varying elements.

Turner *v.* Connecticut Co.

As a general principle the service rendered by a public utility corporation should be the same to all patrons similarly circumstanced; but the element of the distance for which a trolley passenger is carried for a single fare on one line, as compared to the distance on another or on several others, is not invariably the controlling factor in determining the reasonableness of the rate complained of; as a rule other factors are necessarily relevant before the conclusion of a discrimination in rates can be made.

In the present case the petitioners did not claim that the trolley rate in question was intrinsically unreasonable, but that it discriminated unfairly against their locality. *Held* that upon the meagre facts as found the trial court would not have been warranted in inferring as matter of fact, and much less would this court be required to infer as matter of law, that the ten-cent fare complained of was exorbitant, excessive, discriminatory or otherwise unreasonable.

A judgment must be controlled by the finding.

Argued April 17th—decided June 14th, 1917.

PETITION for a reduction in the rates of fare charged by the respondent between certain points on one of its lines running from Stamford to Norwalk, alleged to be unreasonable, brought to the Public Utilities Commission who heard and denied the petition, and thence by appeal to the Superior Court in Fairfield County, *Gager, J.;* facts found and judgment rendered confirming the action of the Public Utilities Commission, from which the petitioner Turner appealed. *No error.*

The Connecticut Company operates seven electric street-car lines on its Stamford division, which converge at Atlantic Square in Stamford. Two of these lines run outside of Stamford, one to Sound Beach and and one to Noroton, and five terminate at suburban points in Stamford. Passengers riding from Atlantic Square to Noroton bridge, a distance of 2.33 miles, pay one five-cent fare, and another fare from that point to Noroton village and points beyond. Passengers riding from Atlantic Square to Sound Beach and on the five suburban lines pay one five-cent fare, and on three of these lines ride less than the distance from the

Square to Noroton bridge, while on three they ride a greater distance, viz. to Springdale 3.5 miles, to Sound Beach 3.22 miles, and to Shippan Point 2.79 miles.

The New York and Stamford Railway Company operates an electric street-car line which converges at said Atlantic Square. Passengers riding by this line from the Square to Cos Cob, another suburb of Stamford, pay one five-cent fare and ride 3.8 miles.

Passengers on all of these lines may transfer at the Square from one of these lines to any of the others.

The village of Noroton was originally a part of Stamford, and in all of its associations is closely connected with Stamford. In point of healthfulness, natural beauty, and the character of its population, it is a desirable place to live and is in no particular inferior to Springdale or Cos Cob. Since the electric street-car line was built through Noroton, two houses have been built between the Noroton bridge turnout and St. Luke's Church, and fourteen houses have been built west of and within one quarter of a mile of the Noroton bridge. Since the electric street-car line was built to Springdale and the five-cent fare established between Springdale and Stamford, one hundred and seventy houses have been built in Springdale, and its population has increased rapidly and largely.

On February 24th, 1915, the appellant, together with nine other residents of Darien, petitioned the Public Utilities Commission "to order a fare extension or 'lap-over' so called, operative in both directions between the said Noroton River Bridge and said St. Luke's Church, or to make such other adjustment of fares as may be necessary or advisable, so as to give a single five-cent rate or charge for each passenger between Atlantic Square and St. Luke's Church."

The term "lap-over" is one used in reference to electric street-car lines to denote the distance which a

passenger is allowed to ride beyond a given fare limit before he is required to pay another fare; or upon taking a car going in the opposite direction, the distance which he may ride before reaching a given fare limit at which he will be required to pay a fare.

The Stamford division is one of the poorest earning divisions in the Company's system, and the Stamford portion of the Stamford-Norwalk line of the Connecticut Company's system is one of the best earning lines in this division.

The establishment of the proposed lap-over to St. Luke's Church would extend the first five-cent fare limit out of Stamford, and thereby to some extent decrease the net earnings of the Stamford division.

In December, 1914, by agreement, the towns of Stamford and Darien paid $2,500 on account of the cost of widening the said bridge over Noroton River, and the Connecticut Company the balance of said cost, $3,162, and, in addition, $33,000 in making physical connection between its lines and Noroton River and providing other facilities for through traffic. The Connecticut Company thereafter laid its tracks across the bridge and thus connected its tracks, and this was the last step to complete a continuous line of electric street-car tracks between New York and Boston.

The Commission found and held that the facts before them did not establish the unreasonableness of the present rate and therefore denied the petition. The Superior Court adjudged that the action of the Commission was reasonable and proper, and confirmed it and dismissed the appeal.

*William T. Andrews* and *Peter Dondlinger*, for the appellant (petitioner Turner).

*Seth W. Baldwin*, for the appellee (respondent).

WHEELER, J. The first seven assignments of error are assumed by the appellant to relate to the correction of the finding. In fact they relate to matters which are parts of the memorandum of decision. That is not made a part of the finding, so that its correction cannot be had. The cause is to be decided upon the facts found, not upon those contained in the memorandum of decision. Further, the agreed statements of facts which the appellant assumes to be a part of the record had no place in the record. They were not certified to by the trial court and made a part of the record. So far as we know they were not necessarily before the trial court, and certainly were not necessarily the only facts in evidence. Counsel for the appellee say the appellant petitioner introduced oral testimony. Whether this is accurate or not, the appellant cannot secure the correction of the finding under the method of General Statutes, § 797, without having the evidence certified and made a part of the record.

The assignments of error, aside from those relating to the correction of the finding, are varying ways of stating the single point, that the trial court erred in holding that the action of the Commission was reasonable in finding and deciding that the present rates complained of were not unreasonable.

The Act regulating Public Service Corporations (Chapter 128 of the Public Acts of 1911, p. 1394), in § 23, provides that "any ten patrons of any such company . . . may bring a written petition to the commission alleging that the rates or charges made by such company . . . are unreasonable." Thereupon, after hearing had, the commission, if it finds such rates and charges to be unreasonable, may determine and prescribe just and reasonable maximum rates and charges to be thereafter made by such company, and said company "shall not thereafter demand any rate

or charge in excess of the maximum rate or charge so prescribed."

The limitation of rates to what are reasonable is the enactment, in statutory form, of an ancient rule of the common law. *Raritan River R. Co.* v. *Traction Co.*, 70 N. J. L. (41 Vroom) 732, 743, 58 Atl. 332; *Reagan* v. *Farmers Loan & Trust Co.*, 154 U. S. 362, 397, 14 Sup. Ct. 1062; *Louisville & N. R. Co.* v. *Garrett*, 231 U. S. 298, 311, 34 Sup. Ct. 48. "To limit the rate of charges for services in a public employment, or for the use of property in which the public has an interest, is only changing a regulation which existed before. It establishes no new principle in the law, but only gives a new effect to an old one." *Munn* v. *Illinois*, 94 U. S. 113, 134.

The remedy for the enforcement of reasonable rates provided by our Act was new in this jurisdiction. So long as the company establishes reasonable rates these cannot be lowered by commission or court. When it fails in this duty the Public Utilities Commission is authorized to prescribe just and reasonable maximum rates. And its authority, under this Act, may be invoked whenever the rates as fixed are either so high or so low as to be unreasonable.

The Commission is an administrative one with the delegated legislative function of fixing railway rates. A court may not be required to fix or regulate a tariff of rates for services to be rendered by a public service corporation, since this is a legislative function and may be conferred by law upon a specially designated ministerial body. *Reagan* v. *Farmers Loan & Trust Co.*, 154 U. S. 362, 397, 14 Sup. Ct. 1062; *Interstate Com. Commission* v. *Cincinnati, N. O. & T. P. Ry. Co.*, 167 U. S. 479, 499, 17 Sup. Ct. 896; *Janvrin, Petitioner*, 174 Mass. 514, 55 N. E. 381; *Raritan River R. Co.* v. *Traction Co.*, 70 N. J. L. (41 Vroom) 732, 58 Atl. 332.

Section 29 of the Act provides for an appeal to the Su-

perior Court from any order of the Commission. And
§ 31, as amended by Chapter 225 of the Public Acts of
1913, provides that "said court shall hear such appeal
and examine the question of the legality of the order . . .
and the propriety and expediency of such order, . . .
in so far as said court may properly have cognizance of
such subject." Under this provision the court may
hear and determine whether the order of the Commis-
sion fixing maximum rates, or its order declining to
change the rate fixed by the company, is valid or not,
by ascertaining whether the rate so fixed, or the rate
unchanged, was reasonable or not. Such a question is
a judicial one. It has been so held in construing a like
or similar provision in State and Federal statute. *Jan-
vrin, Petitioner*, 174 Mass. 514, 55 N. E. 381; *Raritan
River R. Co.* v. *Traction Co.*, 70 N. J. L. (41 Vroom) 732,
743, 58 Atl. 332; *Chicago, M. & St. P. Ry. Co.* v. *Min-
nesota*, 134 U. S. 418, 458, 10 Sup. Ct. 462, 702; *Smyth*
v. *Ames*, 169 U. S. 466, 18 Sup. Ct. 418; *Reagan* v.
*Farmers Loan & Trust Co.*, 154 U. S. 362, 397, 14 Sup.
Ct. 1062; *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S.
210, 29 Sup. Ct. 67.

The reasonableness of the rate is to be determined
after viewing its effect upon the public as well as upon
the company. The rate may, on the one hand, be so
low as to be destructive of the property of the com-
pany, or it may be so high as to be an unjust exaction
from the public; either intrinsically so, or because it is
discriminatory. In either instance the rate is unreason-
able. What the court does in passing upon this ques-
tion is to decide after hearing had, in the course of a
judicial proceeding, whether the rate complained of is
so high or so low as to be unreasonable. No satisfac-
tory definition of reasonable, as applied to rates, ap-
plicable to each case, can be made. Each must be
decided upon its own facts and upon a consideration

of many varying elements.  A passenger rate upon a railway to be reasonable, must be just to the public as well as to the railway.  It should be large enough to provide for the passenger reasonable service and for the railway a reasonable return.  The rate may be made high enough to cover the cost of service, the carrying charges, a reasonable sum for depreciation, and a fair return upon the investment.  Less than this will not give the railway a reasonable rate.  The action of a utilities commission which reduces a rate below this point unduly deprives the owners of their property without just compensation.  If a rate exceeds this point to an appreciable degree and the commission, upon proper application, declines to reduce it, the court would, in the absence of other controlling facts, reduce it to a reasonable point.

If a rate in one locality is largely in excess of rates in other localities similarly situated and subject to like conditions, it is an unreasonable rate, for this would instance a discrimination against one locality in favor of another, or other localities.  A discriminating rate of this character would be an unreasonable rate, since, as a general principle, the service of a public utility should be equal to all patrons similarly circumstanced.  Baldwin American Railroad Law, p. 214, Chap. 25, § 6; 4 Elliott on Railroads, § 1467; *Union Pacific Ry. Co.* v. *Goodridge*, 149 U. S. 680, 690, 13 Sup. Ct. 970; *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92, 99, 21 Sup. Ct. 561; *Portland Railway, L. & P. Co.* v. *Oregon R. R. Commission*, 229 U. S. 397, 411, 33 Sup. Ct. 820.

When we examine the finding before us, we see that there are no facts found from which it could have been inferred as matter of fact by the trial court, or must be inferred by us as matter of law, that the ten-cent rate between Atlantic Square and Noroton is exorbitant or excessive.  We have not before us the cost of service

between these points, nor the fair share of the carrying charges and of depreciation, or what would be a fair return for this distance. We are not given either the gross or net earnings, or the per car hour, or per car mile, earnings. Nor are the conditions found to be similar. All that the finding tells us is that the earnings are less on this system than on the defendant's other systems. This unrelated fact, by itself, does not help in ascertaining what, if any, profits there are from this rate, and whether they are excessive or exorbitant.

The petitioner does not stand upon the intrinsic unreasonableness of this rate, but upon the claim that this rate is a discriminatory one, and results, and has resulted, to the serious disadvantage of the people of the village of Noroton. It would seem, from the facts found, that an inference of fact may have been justified that Springdale had grown greatly, and Noroton had not; because of the one community having had a five-cent rate to Atlantic Square and the other not. But we cannot so conclude unless there is a specific finding of that fact. Many other considerations may have operated, or largely contributed, to this result. We may assume that a five-cent rate would benefit Noroton and its public, for this is a self-evident fact. But we do not know what its effect would be upon the returns to the railway. It may be held to be a principle of traffic that a reduction of rates increases the volume of business, but no principle which we are at liberty to regard, tells us in a given case what will be the extent of the increase, or what the effect upon the net returns. *Chicago & Grand Trunk Ry. Co.* v. *Wellman*, 143 U. S. 339, 346, 12 Sup. Ct. 400. In determining the reasonableness of a rate we cannot leave out of the consideration the effect of the change of rate upon the railway return any more than we can that upon the public.

The petitioner's case reduces itself to this: that the

schedule of rates upon the Stamford division gives a materially longer ride for a single five-cent fare on some of the lines converging at Atlantic Square than it does on the Noroton line. In a similar situation the court say: "The question presented for consideration is not the reasonableness *per se* of the charge, but its reasonableness considered in relation to charges made by plaintiff at other localities on its system for like and contemporaneous service; . . . the discrimination, without an excuse recognized by the law, would be in and of itself unjust and unreasonable." *Portland Railway, L. & P. Co.* v. *Oregon R. R. Commission*, 229 U. S. 397, 411, 33 Sup. Ct. 820. The petitioner is accurate in his claim as to the lines to Springdale, Sound Beach and Shippan's Point, but as to the other three lines converging at the Square the single five-cent fare on the Noroton line gives the longer ride. And the distance covered by the single five-cent fare on the Noroton line is practically the average distance the single fare will carry a passenger on all the lines of the system converging at the Square.

The element of distance may be a controlling factor in a case of discrimination, but not invariably so. As a rule other factors are necessarily relevant before the conclusion of a discrimination in rates can be made. Facts which affect the question of traffic profit are factors to be considered. It may be that a divergence in rates between communities similarly conditioned would be discriminatory irrespective of the element of traffic profit. That situation we leave open until it presents itself. And the identity or similarity of conditions are also important factors in determining whether a rate is discriminatory.

The foundation of the petitioner's claim of a discrimination is that the defendant charges "Noroton passengers twice the fare that it charges to other pas-

sengers similarly circumstanced." The finding does not support this. The judgment must be controlled by the finding; and upon that we cannot hold that there was any undue preference or advantage in the other rates, or that the trial court erred in concluding that the rate complained of wás not unreasonable, for the facts found do not support, much less require, the conclusion that this rate is either exorbitant, excessive or discriminatory.

There is no error.

In this opinion the other judges concurred.