## ALBERT LEVITT *vs.* THE PUBLIC UTILITIES COMMISSION ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 8th, 1931—decided April 12th, 1932.

*Albert Levitt, pro se,* (the appellant).

*William E. Thoms* and *Edward M. Day,* for the appellee (defendant The Connecticut Light and Power Company).

*Warren B. Burrows,* Attorney-General, *Ernest L. Averill,* Deputy Attorney-General, and *H. Roger*

630

*Jones,* Assistant Attorney-General, filed a brief, but did not argue the cause, for the appellee (defendant Public Utilities Commission).

MALTBIE, C. J. The plaintiff has appealed from an order of the Public Utilities Commission refusing to direct The Connecticut Light and Power Company to furnish him electric service at his home. The company serves a considerable number of country towns and has established rates for its customers in them, with special provisions governing service where extension lines more than six hundred feet in length are required. Under the latter provisions customers are served at the regular rates if they will agree to use a certain amount of electricity for each one hundred feet of the extension or, if the customer does not wish to use that amount, at an increase over the regular rate based upon the length of the extension beyond six hundred feet; or, if the customer prefers, he may pay the company the cost of the extension in excess of six hundred feet; and provision is made for an adjustment of the charges if others are then or later served by the extension or street lights are installed upon it. The plaintiff's house stands upon a little used country road. The nearest service line of the company is three thousand feet away and between the line and the house are no other buildings which might require service. The next house beyond the plaintiff's is about three thousand feet distant from it with no other possible users of electricity between. The construction of an extension line upon the road to the plaintiff's house would entail more than ordinary cost because it would have to run through woods and over a rocky soil. The trial court has also found that there is no prospect of any real-estate development upon the road within any reasonable length of

time in the future and while this finding is attacked we cannot say that it so lacks reasonable support in the evidence as to justify striking it out. The estimated cost of constructing the extension would be $1332.71, the estimated gross annual revenue at the regular rates charged by the company would be $119.40, and the estimated annual expense of the company in providing the service would be $151.21. The company is in good financial condition and the construction of the extension and service to the plaintiff at the regular rates would not materially affect its financial structure or require a change in its present rate structure.

The basic claim of the plaintiff is that the company was under a duty to build the extension and furnish him service without expense to him or any additional charge beyond its regular rates. Stated broadly, his claim is that a public utility company is obliged to serve all within the territory it is chartered to serve without discrimination in rates provided it can do so without materially affecting its financial or rate structure. An examination of the numerous authorities cited by him does not substantiate this claim. A moment's consideration shows that the application of such a principle, at least as applied to a company with charter authority to serve a large rural area, would be impracticable. If the company were under a duty to build extensions so long as its financial or general rate structure was not affected, it could very likely for a time build extensions as they were requested. But a situation would inevitably be reached where the construction of further extensions would affect its financial and general rate structure. When that situation arose, if its financial or general rate structure is not to be affected, two courses would be open, either to permit the company to refuse any

further extension where service upon it considered by itself would entail a loss to the company or at that time to apply the very principle followed by the commission in this case, to require of the company thereafter to make only reasonable extensions. The first alternative would be to discriminate between those desiring extensions solely upon the basis of the relative order in time at which their requests were made, and the second would, on the one hand, to a considerable extent, make the same discrimination and, on the other, would merely postpone the application of the test of the reasonableness of requiring the particular extension. It is generally recognized that in determining whether or not a public service company is to be required to build an extension to serve a customer or customers, the question is whether, in view of all the circumstances of the case, it is reasonable to compel it to do so. "The question of a public service corporation's duty is not one which is determinable by the application of any such simple test as 'will the proposed new service be immediately self-supporting or remunerative?' Its duty is measured by what it ought reasonably be called upon to do. The test sets up reasonableness as the standard, and in its application here as elsewhere it takes into account all relevant circumstances and has no definite or precise measure. It is clear, however, that in a case like the one before us, prospective future returns from the new undertaking is a factor not to be overlooked or passed over slightingly." *Root* v. *New Britain Gas Light Co.*, 91 Conn. 134, 143, 99 Atl. 599. See also *New York ex rel. Woodhaven Gas Light Co.* v. *Public Service Commission*, 269 U. S. 244, 248, 46 Sup. Ct. 83; *Lukrawka* v. *Spring Valley Water Co.*, 169 Cal. 318, 322, 146 Pac. 640; *Public Service Commission* v. *Brooklyn & Curtis Bay L. & W. Co.*, 122

Md. 612, 619, 90 Atl. 89; *Oklahoma Gas & Electric Co.* v. *State,* 87 Okl. 174, 209 Pac. 777; *Murray* v. *Public Utilities Commission,* 27 Idaho, 603, 623, 150 Pac. 47; *Ladner* v. *Mississippi Public Utilities Co.,* 158 Miss. 678, 131 So. 78; *Zielda Forsee Investment Co.* v. *St. Joseph Gas Co.,* 196 Mo. App. 371, 195 S. W. 52.

Section 3598 of the General Statutes provides: "If any public service company shall unreasonably fail or refuse to furnish adequate service at reasonable rates to any person within the territorial limit within which such company has, by its charter, authority to furnish such service, such person may bring his written petition to the commission alleging such failure or refusal." This statute embodies a recognition by the legislature of the principles we have stated. It was so construed in the *Root* case and has been so considered by the Public Utilities Commission in its decisions. *In re Maple Hill,* P. U. R., 1916B, 308; *Stanley* v. *Danbury & Bethel Gas & Electric Light Co.,* Conn. P. U. Com. Docket No. 5563, October 18th, 1930. In so far as the commission held that the company should not be directed to furnish service to the plaintiff at the regular rates established for its customers living within six hundred feet of its service lines, the trial court committed no error in sustaining its conclusion.

As a public service company is not under a duty to extend its service at its regular rates except where it is reasonable that it should do so, it necessarily follows that it may, and sound policy dictates that it should, establish rates or conditions upon which it will build extensions beyond those limits. Reasonable classification of service and rates is permissible to a public utilities company provided it treats alike all those who are similarly circumstanced. *Gallaher* v.

*Southern New England Telephone Co.,* 99 Conn. 282, 121 Atl. 686; *Bilton Machine Tool Co.* v. *United Illuminating Co.,* 110 Conn. 417, 426, 148 Atl. 337; *Northern Pacific Ry. Co.* v. *North Dakota,* 236 U. S. 585, 598, 35 Sup. Ct. 429; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 54, 29 Sup. Ct. 192; *Phelan* v. *Boone Gas Co.,* 147 Iowa, 626, 628, 125 N. W. 208. If the company has the right to establish two classes of service with differing rates, we do not understand the plaintiff to question the reasonableness of the classification, that is, one applying to its regular service and the other to service for extensions of more than six hundred feet. What he did question in the trial court and questions here is, the reasonableness of the rates and conditions which are imposed for the extension service. That he would in proper proceedings be entitled to raise this issue is not open to question. An examination of the decision of the Public Utilities Commission discloses that it did make a formal finding, following the words of the statute, that the company had not unreasonably failed or refused to furnish the plaintiff adequate service at reasonable rates; but that it did not in fact definitely consider or rule upon the reasonableness of the special rates or conditions established by the company for such a situation as that of the plaintiff. The function of the courts upon such appeals as the one before us is to review the conclusions and decisions of the commission and it is not for the courts in the first instance to pass upon the reasonableness of the rates or requirements established by the company furnishing service. The most the trial court could have done upon the appeal was to find that the commission ought to have ruled upon that question and, if it ought to have done so, to have sustained the appeal upon that ground. We are thus faced with a procedural question and required to con-

sider the issues presented for determination to the commission in the proceedings before it and to the trial court upon the appeal.

The proceedings before the commission originated in a letter from the plaintiff to it in which he stated that he had requested the company to furnish him with light and heat for use in his home, that it had declined to do so except upon conditions which he thought were unreasonable and contrary to law, and that he enclosed a copy of a letter he had written the company. He asked a hearing and also suggested that the company be requested to bring its account books before the commission, as the fundamental questions involved would concern the value of the property of the company in furnishing light, heat and power to its patrons and the return it was making on that value. The enclosed letter to the company stated that it confirmed a conversation which the plaintiff had had with the company's local manager at which the plaintiff had requested the company to furnish him light and power and that the manager had indicated that it would not serve him unless he was willing to pay for the extension of service or guarantee a minimum usage of electricity above the ordinary reasonable usage he might have; that he declined to meet these conditions upon the ground that they were unreasonable and contrary to law; and that he was taking the matter up with the Public Utilities Commission. These letters did not state with any reasonable definiteness the question or questions which the plaintiff was seeking to raise before the commission. The proceedings before it, all of which the plaintiff annexed to his appeal as an exhibit, disclose that he was interrogated during the hearing before the commission as to the precise claim or claims he was making and answered in various ways. The decision of the commission shows

that it finally concluded his real claim to be that, if the company could furnish him service at its regular rates without affecting its financial or rate structure it was under a duty to do so, without regard to the cost of the extension or the prospective return from it. We cannot say that the conclusion of the commission as to the claim he was really making was not one it could reasonably reach. In fact, the plaintiff's appeal to the Superior Court adopts that theory of his case, because it begins with a recital that the plaintiff requested a hearing before the commission upon the refusal of the company to extend its lines to his house and furnish him service at the rates usually charged to other residents of the town in which he lived; and no other allegations in the appeal broaden the scope of the issue so made. The Superior Court was therefore correct in restricting the issues to those which the commission found to have been presented to it and in not considering the reasonableness of the rates and conditions which the company had established for extensions to persons situated as was the plaintiff; and it follows that this question is not before us.

At the hearing before the commission, the plaintiff sought to challenge the general rate structure of the company and renewed that effort before the trial court upon the appeal. Had the plaintiff been entitled to the extension he sought upon the basis of the regular rates established by the company, the reasonableness of those rates might have been open to inquiry by the commission. As he was not entitled to the extension at the regular rates, the reasonableness of those rates would only have been of moment as they might be involved in a determination of the reasonableness of the special rates established by the company for extensions beyond six hundred feet from its service lines. But, as we have said, that question was not considered

by the commission and was not before the trial court. The mere fact that one resides within a district which a public utility corporation has charter authority to serve does not give him such an interest in the rate structure of the company as to permit him to challenge it before the commission or before the courts. He must be either a customer of it or one honestly seeking to have its service extended to him under circumstances involving the reasonableness of that schedule; and if because of either of these facts he is entitled to make such a challenge he must proceed before the commission in such a way as fairly to apprise it of his claim, and upon an appeal from an order must raise the issue before the court by proper pleading. The plaintiff is not a customer of The Connecticut Light and Power Company and regarded as a prospective customer he did not bring before the commission or the trial court the reasonableness of the general rate schedule of the company in such a way as to require it to be considered.

There is no error.

In this opinion the other judges concurred.