CEDAR ISLAND IMPROVEMENT ASSOCIATION ET AL. *v.* CLINTON ELECTRIC LIGHT AND POWER COMPANY ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and CONWAY, Js.

Argued April 6—decided May 3, 1955

*Irving H. Rosenthal,* with whom, on the brief, was *Solomon Z. Bromberg,* for the plaintiffs.

*Olcott D. Smith,* with whom were *W. Robert Hartigan* and, on the brief, *C. Duane Blinn,* for the named defendant et al.

*William R. Connole,* with whom, on the brief, was *John J. Bracken,* attorney general, for the defendant public utilities commission.

BALDWIN, J.  The plaintiffs petitioned the public utilities commission to order the defendants, The Clinton Electric Light and Power Company and The Connecticut Light and Power Company, to serve Cedar Island with electric current as required, it is claimed, by § 5673 of the General Statutes. The petition was denied,[1] and the plaintiffs appealed to the Superior Court, where the commission, upon its own motion, was made a party defendant. The court reserved the matter for the advice of this court.

The stipulated facts can be stated briefly as follows: Cedar Island is located in Clinton Harbor east of Hammonasset State Park. Its easterly end is occupied by the plaintiffs as a summer recrea-

---

[1] P.U.C. Docket No. 8925, Finding and Order, p. 11.

tional area. The defendant The Clinton Electric Light and Power Company, hereinafter referred to as the Clinton Company, maintains a line, distributing current to Hammonasset State Park, 7500 feet westerly from the recreational area on Cedar Island. The Clinton Company also maintains a line to a point on Grove Street in Clinton about 900 feet north of Cedar Island across the open waters of Clinton Harbor. There are forty-four potential users of current in the recreational area, of whom twenty-five would presently be willing to accept electric service. The area has a density of subscribers for electric service averaging more than two per mile on any line which might be constructed to serve it. The cost of extending a line to the area would be $27,280, not including the cost of a distribution system on the island itself. Maintenance would be difficult and expensive. The cost and the prospective income from the maximum guaranteed return of $13.50 per mile per month, fixed by § 5673 of the General Statutes, would result in a loss to the defendants in the foreseeable future.

The three questions upon which the parties seek the advice of this court[2] raise two basic issues: (1)

[2] "(i) Did the Public Utilities Commission err in finding that Section 5673 did not require it to order The Clinton Electric Light and Power Company to extend its lines and render electric service to Cedar Island on the rates set forth in its duly filed Rural Extension Rate, having found that such extension would unreasonably burden the balance of the Company's customers and that no economic justification existed therefor?

"(ii) Assuming a negative answer to question number one above, is the said Finding and Order of the Public Utilities Commission under Docket No. 8925 so contrary to the evidence as to constitute an illegal exercise of the discretionary powers of the Public Utilities Commission?

"(iii) Did the Public Utilities Commission err in finding that electric service is not available to the plaintiffs under the provisions of Section 5673?"

What is the nature and extent of the discretionary power of the commission under § 5673 of the General Statutes? (2) Has the commission acted in abuse of that discretion?

Section 5673 of the General Statutes provides that the public utilities commission shall "order and direct" the electric utility companies distributing current in this state to extend their lines in their chartered territory to all "unserved areas" having a density of subscribers for electric service averaging at least two per mile on the proposed new lines.[3] In fixing the rates to be charged for service on such new lines, the commission is directed to exercise its statutory powers and to consider the expense and revenues of each company as a whole in arriving at a fair return on the fair value of its properties, except that any guarantee, when required, shall not exceed $13.50 per mile per month. The commission is further directed "to advance the objects of [§ 5673] in every lawful manner." The plaintiffs insist upon a literal interpretation of this statute. They claim that it is a mandate to the commission to order the companies to extend their lines for a prospective guaranteed rate not in excess of $13.50 per mile

[3] "Sec. 5673. EXTENSION OF ELECTRIC LINES TO UNSERVED AREAS. DETERMINATION OF RATES. (a) The commission shall order and direct the electric utility companies distributing current in this state to extend lines in their chartered territory, to all unserved areas having a density of subscribers for electric service averaging at least two per mile on such proposed new lines, in accordance with the provisions of this section. (b) The commission is directed, in considering the rates of electric utility companies in this state or in the proceedings having to do with such rates, to consider the expenses and revenues of each company as a whole, in arriving at a fair return on the fair value of such properties. In prescribing a rate for service on such new lines, the commission shall exercise its statutory powers, except that the guarantee required shall not exceed thirteen dollars and fifty cents per mile per month. (c) The commission is directed to advance the objects of this section in every lawful manner."

per month, regardless of the cost of the extension or the difficulties of maintaining the service. In short, they maintain that, the qualification of at least two subscribers to a mile of extension having been found to exist, the commission has no discretion but to order the service at a guaranteed return not to exceed the maximum fixed by the statute. The defendants, on the other hand, claim that the statute is a mandate to the commission to order the companies to extend their service only when it would be reasonable to do so in the light of the cost, the return and the additional burden which might be placed upon other customers of the company if the lines were extended. Briefly stated, they contend that the commission has discretion to order only those extensions under § 5673 which, in the exercise of the sound discretion of the commission, it finds to be reasonable.

The resolution of these issues requires us to ascertain the legislative intent expressed in § 5673. For this purpose we must look to the wording of the statute and to its history and basic policy as disclosed by pre-existing legislation and the circumstances that brought about the enactment of the law under consideration. *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 657, 103 A.2d 535, and cases cited. The obligation of an electric utility company to extend its lines to unserved areas is dealt with in two different sections of our statutes. Section 5410 provides that if a company "shall unreasonably fail or refuse to furnish adequate service at reasonable rates to any person" within its chartered territory, that person may petition the commission, which, if it finds, after a hearing, that adequate service has been refused, may prescribe the terms and conditions under which electric service is to be

furnished.[4] We have construed this statute as requiring only such extensions as the commission may find reasonable under all the circumstances. *Levitt v. Public Utilities Commission*, 114 Conn. 628, 633, 159 A. 878. This is the generally accepted rule. *Root v. New Britain Gas Light Co.*, 91 Conn. 134, 143, 99 A. 559; 43 Am. Jur. 602, § 48; note, 58 A.L.R. 537. Factors which enter into the determination of the reasonableness of a demand for an extension of service are the need and cost of the extension, the return to be expected from it, the effect upon the company's revenue, and the advantage to the public to be derived from it. *New York ex rel. Woodhaven Gas Light Co. v. Public Service Commission*, 269 U.S. 244, 248, 46 S. Ct. 83, 70 L. Ed. 255; *Milwaukee Electric Ry. & Light Co. v. Wisconsin ex rel. Milwaukee*, 252 U.S. 100, 105, 40 S. Ct. 306, 64 L. Ed. 476; *Mississippi Railroad Commission v. Mobile & O.R. Co.*, 244 U.S. 388, 391, 37 S. Ct. 602, 61 L. Ed. 1216.

Section 5673, originally entitled "An Act concern-

---

[4] "Sec. 5410. RATES AND SERVICE AFFECTING A SINGLE PERSON. If any public service company shall unreasonably fail or refuse to furnish adequate service at reasonable rates to any person within the territorial limits within which such company has, by its charter, authority to furnish such service, such person may bring his written petition to the commission alleging such failure or refusal. Thereupon the commission shall fix a time and place for a hearing upon such petition and shall mail notice thereof to the parties in interest at least one week prior to such hearing. Upon such hearing, the commission may, if it shall find that such company has unreasonably failed or refused to furnish such person with adequate service at reasonable rates, prescribe the service to be furnished by such company to such person and the conditions under which, and maximum rates or charges at which, such service shall be furnished. Such company shall thereafter furnish such service to such person in accordance with the conditions so prescribed and shall not thereafter demand or collect any rate or charge for such service in excess of the maximum rate or charge so prescribed. This section shall be construed so as to include telephone exchange areas."

ing Areas Not Served with Electric Current," was adopted at the regular session of the General Assembly in 1941. Public Acts 1941, c. 257; Sup. 1941, § 619f. Since that time it has not been amended or considered in any case in our courts. On the same day it was approved, June 18, 1941, the governor also approved an act entitled "An Act concerning Electric Cooperative, Non-Profit, Membership Corporations," enacted at the same session of the General Assembly. Public Acts 1941, c. 287; Sup. 1941, §§ 583f-611f. At that time and in the years immediately preceding 1941, extension of electric service appears to have been much in the public mind. In 1936 the Congress, after hearings before its house committee on interstate and foreign commerce,[5] had passed "A Bill to Provide for Rural Electrification and for Other Purposes," popularly known as the Rural Electrification Act of 1936. 49 Stat. 1363. This act was substantially amended in 1938.[6] 52 Stat. 818, 7 U.S.C. § 903. It is fair to assume that this federal legislation furnished some of the inspiration for the legislation in our own state and that both of the acts of 1941 were enacted with the purpose of extending electric service more rapidly than had been done theretofore at the instance of the companies or the commission or of some individual acting under § 5410.

On July 1, 1941, the commission held a hearing to which the electric utility companies of the state, including the two defendants, were summoned.[7] As a result of this hearing, an order was issued to each of twelve companies "to promptly extend and build

---

[5] See Hearings before the House Committee on Interstate and Foreign Commerce on S. 3483, 74th Cong., 2d Sess. (1936).

[6] See Hearings before Subcommittee of the Senate Committee on Agriculture and Forestry on S. 3456, 75th Cong., 3d Sess. (1938).

[7] P.U.C. Docket No. 7061.

as expeditiously as possible electric lines to all un-served areas within [the company's] chartered terri-tory where there exist subscribers for electric service averaging at least two subscribers per mile of each mile of new line extension and where subscribers agree with [the company] to guarantee it a revenue of $13.50 per mile of extension per month." The Clinton Company was directed to charge its prevail-ing rural extension rate as on file with the commis-sion. In the case of the Connecticut Light and Power Company, a schedule of rates was prescribed by the commission in its order.[8] In its annual report to the governor for 1941, the commission stated that in the year ending May 1, 1941, 262 miles of rural exten-sion were built and that 1257 miles were required to reach all the unserved areas.[9] A survey made on the basis of the service required to accommodate as few as two customers to a mile, as provided in § 5673, re-vealed that 1093 miles would be necessary to serve 4587 prospective customers. The commission's re-port for the following year stated that electric serv-ice had been extended to 98 per cent of the area of the state and that all roads with a density of popula-tion of four persons to a mile had been covered when § 5673 was adopted in 1941.[10] The report contains this illuminating language bearing upon the legislative in-tent expressed in § 5673: "The Commission was given a mandate to carry out the objectives of [§ 5673] ...." It related further that a hearing had been held with representatives of the electric companies, that rates had been agreed upon and that "[t]he Commission felt a responsibility to integrate such new rates into existing rates in such manner as to involve no pen-

---

[8] P.U.C Docket No. 7061.

[9] 30 P.U.C. Ann. Rep. 8 (1941).

[10] 31 P.U.C. Ann. Rep. 15 (1942).

alty to the new customers." The report contained this language: "This bill [§ 5673] made it mandatory for the companies to extend their lines where the density of customers was at least two to the mile and where a minimum guarantee of thirteen dollars and fifty cents per month per mile was given." This language is a revealing administrative interpretation of § 5673 made by the commission at that time.

The order issued to the Connecticut Light and Power Company contained the following exception: "6. Even though conditions set forth in Paragraph 1 [of the order] may be satisfied, an extension may be so uneconomic that the company may be authorized by the Public Utilities Commission to decline to construct such extension." [11] The defendant companies take the position that, while the act is a mandate for the extension of electric service to unserved areas, the legislature, in enacting it, must have had in mind the established rule embodied in § 5410 that a person living within the franchised area of a public utility is entitled to an extension only when the extension is reasonable under all the circumstances. See *State ex rel. Ryan* v. *Bailey,* 133 Conn. 40, 48, 48 A.2d 229; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 665, 103 A.2d 535. They argue that since § 5410 provides an administrative remedy which can be invoked by a person seeking an extension of service and § 5673 does not, the legislative failure to provide any remedy in the latter section manifests an intention to modify the rule of reasonableness to a limited extent only and not to the point where an individual can complain if an extension is not ordered under § 5673. Briefly stated, the argument is that §§ 5673 and 5410 must be read together as providing a single remedy available under the

[11] P.U.C. Docket No. 7061.

latter section, which allows the commission to grant, on the petition of an individual, the extensions that are reasonable under all the circumstances, and to refuse those which it considers, in its discretion, are not. This appears to have been the interpretation placed upon § 5673 by the commission itself, as evidenced by the exception in the order issued to the Connecticut Light and Power Company noted above,—an interpretation which has been followed by the commission and not questioned until now.[12]

We do not accept this interpretation. In enacting § 5673, the legislature clearly expressed the purpose and intent of speeding up the electrification of the state, in a manner which was not possible under the existing law, by directing the commission to order the utility companies to provide service for unserved areas. This is clearly evident from the history of the statute and the circumstances under which it was enacted. It is manifest from the unambiguous wording of the statute itself. The practical interpretation placed upon it by the administrative agency charged with its enforcement, as discussed heretofore, especially where that interpretation is followed unchallenged for a number of years, is entitled to high respect. *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 195, 167 A. 709. It is by no means conclusive. *Downer* v. *Liquor Control Commission,* 134 Conn. 555, 561, 59 A.2d 290. Courts must construe statutes to effectuate their legislative purpose. *West Hartford* v. *Talcott,* 138 Conn. 82, 90, 82 A.2d 351; *West Hartford* v. *Thomas D. Faulkner Co.,* 126 Conn. 206, 211, 10 A.2d 592; *Merchants Bank & Trust Co.* v. *Pettison,* 112 Conn. 652, 655, 153 A. 789. Section 5673 was a mandate to the commission which deprived it, when acting

---

[12] P.U.C. Docket No. 8925, Finding and Order, p. 10.

under that statute, of the power to exercise the broad regulatory discretion confided to it under § 5410.

The defendant companies contend that § 5673 applies only to extensions along existing rural highways, whereas in this case an extension is requested across open land and water. The commission correctly rejected this contention.[13] The language of the statute makes no reference to rural areas when it might easily have done so. It refers to "all unserved areas." The title of the act, "An Act concerning Areas Not Served with Electric Current," while not conclusive, is in this instance, when taken with the wording of the act itself, significant. *Baker* v. *Baningoso,* 134 Conn. 382, 387, 58 A.2d 5; *State* v. *Muolo,* 119 Conn. 323, 330, 176 A. 401. This claim has no merit.

In regulating the activities of a public utility, the state is exercising its police power. The method and extent of the exercise of that power reside in the determination of the legislature. *New Haven* v. *New Haven Water Co.,* 132 Conn. 496, 511, 45 A.2d 831; *Los Angeles Gas & Electric Corporation* v. *Railroad Commission of California,* 289 U.S. 287, 304, 53 S. Ct. 637, 77 L. Ed. 1180. It cannot be exercised in an arbitrary and discriminatory fashion. If it is, the act is unconstitutional. A public utility company is entitled to a fair return upon the fair value of such of its property as is useful and being used in providing service. *New Haven* v. *New Haven Water Co.,* 118 Conn. 389, 401, 172 A. 767; *Turner* v. *Connecticut Co.,* 91 Conn. 692, 699, 101 A. 88; *Federal Power Commission* v. *Hope Natural Gas Co.,* 320 U.S. 591, 605, 64 S. Ct. 281, 88 L. Ed. 333; *Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission,* 262 U.S. 276, 287,

[13] P.U.C. Docket No. 8925, Finding and Order, p. 9.

43 S. Ct. 544, 67 L. Ed. 981; see Federal Power Act, 49 Stat. 851, 16 U.S.C. § 824d. The commission, carrying out the mandate of the legislature under § 5673, may order a utility company to extend its lines into unserved territory when there are at least two customers for each mile of extension, for a maximum guaranteed return of $13.50 per month for each mile of extension. In the ordinary situation, such an extension might be made without great cost and difficulty of maintenance. In the instant case, expensive overhead construction or a submarine cable is required to reach the properties of the petitioners on Cedar Island. In addition, there would be the unknown cost of the installation of a distribution system. There are localities in this state which could be furnished with electric service only at a cost so high that the maximum return allowed under § 5673 would be so inadequate as to result in a public use of the utility company's property without just compensation. Under § 5673 (b), a rate yielding a fair return for service is to be determined upon the basis of the company's expenses and revenues as a whole, except that the guarantee may not exceed $13.50 per mile per month. Consequently, there appear to be but two alternatives: the additional cost must be borne by the company, or the company must seek such an increase in rates to be paid by all the subscribers in its chartered territory as will absorb the cost and give a fair return. As to the first, the state cannot, under the guise of a regulation, require a utility company to make excessive expenditures for the extension of service to unserved areas which will, in effect, compel the company to devote its property to public use without just compensation. *New York ex rel. Woodhaven Gas Light Co.* v. *Public Service Commission,*

269 U.S. 244, 248, 46 S. Ct. 83, 70 L. Ed. 255; *Smith v. Illinois Bell Telephone Co.,* 282 U.S. 133, 160, 51 S. Ct. 65, 75 L. Ed. 255; *Newton v. Consolidated Gas Co.,* 258 U.S. 165, 175, 42 S. Ct. 264, 66 L. Ed. 538; *Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Railroad Commission,* 136 Wis. 146, 167, 116 N.W. 905. That a company might adopt the other alternative and seek an increase in rates was suggested in *State ex rel. Milwaukee v. Milwaukee Electric Ry. & Light Co.,* 165 Wis. 230, 237, 161 N.W. 745, aff'd, 252 U.S. 100, 105, 40 S. Ct. 306, 64 L. Ed. 476, and in *New York ex rel. Woodhaven Gas Light Co. v. Public Service Commission,* supra, 249. If that course is followed, the effect of the increased cost upon the company's subscribers in the remainder of its chartered territory must ultimately be determined. The rates imposed upon them in order to absorb this increased cost cannot be discriminatory. *Turner v. Connecticut Co.,* 91 Conn. 692, 699, 101 A. 88; *Interstate Commerce Commission v. Jersey City,* 322 U.S. 503, 517, 64 S. Ct. 1129, 88 L. Ed. 1420; *Lukrawka v. Spring Valley Water Co.,* 169 Cal. 318, 333, 146 P. 640; see General Statutes, § 5411.

The legislature did not intend that a utility company's property would be used without just compensation or that a discriminatory rate would be charged to other subscribers in order to absorb the cost of an uneconomic extension. This is obvious from subsection (c) of § 5673, which reads: "The commission is directed to advance the objects of this section in every lawful manner." Further, it is a generally accepted presumption in statutory construction that the legislature intended to enact a constitutional statute, and the courts, if they can, must construe the act in such a way as to make it valid. *State v. Muolo,* 119 Conn. 323, 330, 176 A.

401; *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 247, 111 A. 363; *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 209, 91 A.2d 773. A statute may, as to one set of circumstances, operate in a constitutional fashion but, as to another, produce a result which renders its operation invalid. *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112; *Strain* v. *Mims,* 123 Conn. 275, 288, 193 A. 754; *Len-Lew Realty Co.* v. *Falsey,* 141 Conn. 524, 530, 107 A.2d 403.

If the commission is to refuse to order an extension under the mandate of § 5673, it must find facts from which it can reasonably and logically conclude that an order for an extension in the situation presented would amount either to a use of the company's property without just compensation or to the inevitable imposition of a discriminatory rate upon other subscribers to the company's service. Upon an appeal from such a refusal, the court can then determine whether the commission acted in an unreasonable, arbitrary or illegal manner and, if the constitutional question is properly raised, whether the statute as applied to the given situation operates in an unconstitutional way. The stipulation in this case fails to include sufficient facts upon which to make these determinations. The stipulated facts do not contain sufficient information to resolve it. See *Turner* v. *Connecticut Co.,* 91 Conn. 692, 699, 101 A. 88. It does not appear, for example, what the total cost of this proposed extension will be in dollars and cents or whether any additional cost will be reflected in an increase in the rates paid by the subscribers of the Clinton Company alone or of its parent company, the Connecticut Light and Power Company, generally, or how big that increase may be. It is found that the proposed extension will result in a loss to the

company in the foreseeable future, but a company has no right to expect that all of its extensions will be immediately remunerative. *Levitt* v. *Public Utilities Commission,* 114 Conn. 628, 632, 159 A. 878; see *Arkansas-Missouri Power Co.* v. *Brown,* 176 Ark. 774, 4 S.W.2d 15. The finding and order of the commission[14] states that the extension would undoubtedly place a burden on the balance of the customers which would be more than is reasonable and that the cost would be disproportionate to the benefits received by the applicants. Such a finding might be adequate to support a conclusion that it would not be reasonable to order the company to build the extension, the test applied in the *Levitt* case, supra. It, however, falls short of demonstrating that the extension would result in the confiscation of the company's property without reasonable compensation or in the imposition of a discriminatory rate upon the company's other subscribers.

Because of the dearth of essential facts, we decline to answer the questions reserved and we remand the case to the Superior Court to be proceeded with according to law.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.

---

[14] P.U.C. Docket No. 8925, Finding and Order, p. 9.